CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ANDREW PAULSON (CABN 267095)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    andrew.paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JUSTIN HILL,<br><br>    Defendant. | CASE NO. 4:24-cr-00509-JST<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: December 19, 2025<br>Time: 9:30 a.m.<br>Judge: Hon. Jon S. Tigar |

## I.    INTRODUCTION

Over the course of approximately a year-and-a-half between July 2021 and January 2023, Justin Hill engaged in a Ponzi-like scheme that resulted in him defrauding a company of over one million dollars. To accomplish this sophisticated scheme, Hill created about three dozen shell companies, opened dozens of bank accounts for those shell companies, and stole and utilized the identities of multiple innocent third parties. Hill's fraud crippled the Victim Company, curbing its growth trajectory for years and forcing it to lay off more than a third of its employees.

On February 14, 2025, Hill pleaded guilty to four counts of wire fraud in violation of 18 U.S.C. § 1343. For the reasons set forth below, the government recommends that the Court sentence Hill to 27 months' imprisonment and three years of supervised release.

## II.   OFFENSE CONDUCT AND SENTENCING GUIDELINES CALCULATION

### A.  The Scheme

In 2020, the Victim Company created a service that allowed contractors to receive early payment for invoices they submitted to their clients.  Under this system, a contractor would submit an invoice to their client via email and copy the Victim Company's early payment email account.  After verifying the validity of the invoice with the contractor's client, the Victim Company would pay the contractor the value of the invoice minus a fee.  The Victim Company would then seek repayment of the full amount of the invoice from the contractor's client.

Between July 14, 2021, and January 31, 2023, Hill exploited the Victim Company's early payment system by submitting approximately 200 invoices to the Victim Company that sought early payment for work that Hill falsely claimed to have performed for shell entities that he created using the corporate identities of real companies with which he was familiar.  In furtherance of this scheme, Hill created dozens of shell companies, opened bank accounts for these shell companies, and registered internet domains and email addresses in the name of these shell companies.  After submitting the fraudulent invoices to the Victim Company and requesting early payment, Hill used the email addresses he created for these shell companies to falsely verify the accuracy of the invoices.  In reliance on these fraudulent invoices and false certifications, the Victim Company paid Hill the amount listed on the invoices minus an early payment system fee.

To disguise this scheme and to lull the Victim Company into continuing to pay the fraudulent invoices, Hill, acting through a shell company and using a bank account that he created in the name of the shell company, repaid some of the invoices using funds he fraudulently obtained from other bogus invoices he submitted to the Victim Company.  Eventually, Hill stopped reimbursing the Victim Company for the value of these fraudulent invoices, thus allowing him to pocket the money the Victim Company had already paid to him directly through the early payment system.  In total, Hill fraudulently obtained approximately $1,105,027 from the Victim Company that he never repaid.

### B.  Execution of the Scheme

***Count One***: In September 2020, Hill contracted to perform services for Company B, which was owned by Individual 1 and his spouse.  On January 10, 2022, he created an email mailbox that used

Company B's name as the domain name.  On April 11, 2022, he registered a limited liability company (LLC) in the State of Utah with a business name similar to Company B and an assumed alias (DBA) that was identical to Company B.  The next day, Hill opened a Wells Fargo business checking account in the name of this shell company.  Between January 10, 2022, and December 8, 2022, Hill submitted seven invoices to the Victim Company that sought reimbursement for work that he falsely claimed to have done for Company B.  Each time, he used the email address that he had created in Individual 1's name to falsely certify the validity of those invoices.  To disguise his fraudulent scheme and to lull the Victim Company into paying subsequent fraudulent invoices he submitted, Hill used the bank account he created to repay the Victim Company for the value of the first five of these fraudulent invoices.

On December 8, 2022, Hill submitted an invoice to the Victim Company that sought $15,500 in reimbursement for services he falsely claimed to have provided to Company B.  The invoice purported to bill Individual 1 at the email address that Hill had created using Company B's name.  Using that email address and posing as Individual 1, Hill emailed the Victim Company and certified the validity of the fraudulent invoice.  He signed the email with Individual 1's name.  In reliance on his fraudulent certification, on December 8, 2022, the Victim Company wired $14,415 to Hill's personal bank account.  Hill never repaid the Victim Company these funds.

*Count Two*: On September 20, 2021, Hill formed an LLC ("Company C") with Individual 2.  On November 17, 2021, he registered a website with a domain name using Company C's name, and on November 22, 2021, he created an email mailbox using Individual 2's first name and Company C's name as the domain name.  That same day, Hill and Individual 2 opened a Wells Fargo business account in the name of Company C.  Between November 22, 2021, and December 13, 2022, Hill submitted six invoices to the Victim Company that sought reimbursement for work that he falsely claimed to have done for Company C.  Each time, he used the email address that he had created and Individual 2's name to falsely certify the validity of those invoices.  To disguise his fraudulent scheme and to lull the Victim Company into paying subsequent fraudulent invoices, Hill used the bank account he created to repay the Victim Company for the value of the first three of these fraudulent invoices.

On August 18, 2022, Hill submitted an invoice to the Victim Company that sought $18,500 in reimbursement for services he falsely claimed to have provided to Company C.  The invoice purported to

bill Individual 2 at the email address that Hill had created using Company C's name. Using that email address and posing as Individual 2, Hill emailed the Victim Company and certified the validity of the fraudulent invoice. He signed the email with Individual 2's name. In reliance on his fraudulent certification, on August 19, 2022, the Victim Company wired $17,390 to Hill. Hill never repaid the Victim Company these funds.

*Count Three.* In September 2021, Hill contracted to perform services for Company D, which was owned by Individual 3. Individual 4 was also affiliated with Company D. On December 22, 2021, Hill registered a website with a domain name that was similar to a domain name associated with Company D. Also on December 22, 2021, Hill created an email address using Individual 4's first name and the domain name that he had registered using Company D's name. On March 29, 2022, Hill registered an LLC in the State of Utah with a name similar to that of Company D. On March 30, 2022, he opened a Wells Fargo business checking account in the name of the LLC he created. Between December 22, 2021, and December 2, 2022, Hill submitted eight invoices to the Victim Company that sought reimbursement for work that he falsely claimed to have done for Company D. Each time, he used the email he had created and Individual 4's name to falsely certify the validity of those invoices. To disguise his fraudulent scheme and to lull the Victim Company into paying subsequent fraudulent invoices he submitted, Hill used the bank account he created to repay the Victim Company for the value of the first four of these fraudulent invoices.

On September 15, 2022, Hill submitted an invoice to the Victim Company that sought $16,000 in reimbursement for services he falsely claimed to have provided to Company D. The invoice purported to bill Individual 4 at the email address that Hill had created using Company D's name. Using that email address and posing as Individual 4, Hill emailed the Victim Company and certified the validity of the fraudulent invoice using Individual 4's name. In reliance on that fraudulent certification, on September 15, 2022, the Victim Company wired $15,040 to Hill. He never repaid the Victim Company these funds.

*Count Four.* In January 2022, Hill contracted to provide services to Company E, which was associated with Individual 3. On April 4, 2022, he created an email address using Individual 3's first name and Company E's name as the domain name. Between April 4, 2022, and November 25, 2022, Hill

GOVERNMENT SENTENCING MEMO                4
4:24-cr-00509-JST

submitted six invoices to the Victim Company that sought reimbursement for work that he falsely claimed to have done for Company E. Each time, Hill used the email address that he had created and Individual 3's name to falsely certify the validity of those invoices. To disguise his fraudulent scheme and to lull the Victim Company into paying subsequent fraudulent invoices he submitted, Hill repaid the first three of these fraudulent invoices.

On November 25, 2022, Hill submitted an invoice to the Victim Company that sought $14,500 reimbursement for services he falsely claimed to have provided to Company E. The invoice purported to bill Individual 3 at the email address that he had created using Company E's name. Using that email and posing as Individual 3, Hill emailed the Victim Company and certified the validity of the fraudulent invoice, signing the email with Individual 3's name. In reliance on that fraudulent certification, on November 25, 2022, the Victim Company wired $13,485 to Hill, who never repaid the Victim Company these funds.

**C. The Government Agrees with the Calculation of the Offense Level in the PSR**

The government agrees with the offense level calculated in the PSR, which matches that in the plea agreement. PSR ¶ 34-44.

| Counts 1-4: Wire Fraud | | |
|---|---|---|
| | **U.S.S.G. Section** | **Level/Points** |
| Base Offense Level | § 2B1.1 | 7 |
| Specific Offense Characteristic:<br>- Loss = $550,000 - $1.5 million<br>- Sophisticated Means | <br>§ 2B1.1(b)(1)(H)<br>§ 2B1.1(b)(10) | <br>+14<br>+2 |
| Adjusted Offense Level | | 23 |
| Acceptance of Responsibility | § 3E1.1 | -3 |
| Zero-Point Offender Reduction | § 4C1.1 | -2 |
| Total offense level | | 18 |

The government also agrees with the PSR's calculation of Hill's Criminal History Category (CHC). PSR ¶ 48. With a total of criminal history score of zero, Hill has a CHC of I. *Id.* With a CHC of I, the advisory Guidelines range here is 27-33 months. PSR ¶ 80.

**III.   SENTENCING RECOMMENDATION**

**A. Legal Standard**

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of

any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B.  The Government's Recommended Sentence**

The seriousness of the offense, the need for deterrence, and the history and characteristics of the defendant all support the government's 27-month recommendation. To begin with, the offense here is serious. Hill's scheme was deliberate, sophisticated, and devastating to the Victim Company. As the company stated in its victim impact statement, Hill's fraud nearly led to the company declaring bankruptcy. Hill exploited the company's vulnerability as a startup, bilking it of over a million dollars. This had serious consequences on the lives of real people. As a result of Hill's scheme, the company had to lay off over a third of its employees and reduce its growth trajectory for years going forward, including by significantly impacting the company's valuation. A 27-month sentence is necessary not only to provide just punishment to Hill for his actions in this case, but to deter other fraudsters who engage in similar schemes.

It also appears that this was not the only fraudulent scheme Hill was involved in. Individual 2 submitted a victim impact statement that not only discusses Hill's use of her identity in connection with this scheme but also Hill's use of Individual 2's identity to apply for a credit card and to take out additional student and vehicle loans in her name. As she details in her victim impact statement, this had a devastating impact on Individual 2's mental health, relationships with her family, and her finances. While this may not be "relevant conduct" for purposes U.S.S.G. § 1B1.3, it is pertinent to the Court's consideration of the Section 3553(a) factors and should be considered.

The government recognizes that Hill pleaded guilty early and took responsibility for his crimes. It is also sympathetic to Hill's family situation and the medical issues that appear to have played a role in motivating Hill to commit this fraud. The government understands how stressful and difficult it is for a parent to have to deal with a sick child. While this may explain Hill's crimes, it does not excuse them. The government's recommended sentence, which is at the low end of the Guidelines range, accounts for these circumstances. Regardless of the difficult conditions that confronted Hill, nothing justifies such a deliberate, brazen, and sophisticated fraud that did so much damage to the Victim Company and its employees.

In addition to a 27-month sentence of imprisonment, the Court should also order Hill to pay a total of $1,610,435.57 in restitution. This is the sum of $1,105,026.50 for the unpaid invoices, $489,750.48 in prejudgment interest,[1] and $15,658.59 in attorneys' fees associated with the Victim Company's participation in the government's investigation and prosecution of Hill. These categories make up the Victim Company's actual loss and are recoverable under the Mandatory Victim Restitution Act (MVRA) of 1996. *See* 18 U.S.C. § 3663A(b); *United States v. Smith*, 944 F.2d 618, 626 (9th Cir. 1991) ("Foregone interest is one aspect of the victim's actual loss, and thus may be part of the victim's compensation."); *United States v. Catherine*, 55 F.3d 1462, 1465 (9th Cir. 1995) (holding that under the MVRA, "restitution can include prejudgment interest") (citing *Smith*, 944 F.2d at 626); *United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015) ("The law is settled that a court may include attorneys' fees in a restitution order when the victim incurred the expenses to participate in law enforcement's investigation and prosecution of a defendant.").

///

///

///

///

///

---

[1] This corresponds to a 14% interest rate, which is the minimum rate of the variable interest rate on the non-collateralized loan that the Victim Company obtained to fund the early payment program that Hill's fraud scheme exploited. It is the government's understanding that the Victim Company still owes approximately $775,000 on that loan.

GOVERNMENT SENTENCING MEMO                7
4:24-cr-00509-JST

## IV.    CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Hill to 27 months' imprisonment, three years' supervised release, and $1,610,435.57 in restitution.


DATED:  December 12, 2025                    Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


*/s/ Andrew Paulson*
ANDREW PAULSON
Assistant United States Attorney